HENRY TURNEY, Guardian, etc., *v.* JAMES L. DENHAM, *et als.*

CONTRACT. *Consideration.* A forbearance to sue to enforce repayment of a payment made in Confederate notes at a time when, as the law then stood, the payment might have been avoided, is a sufficient consideration to support a promise to repay.

Case cited: Vance *v.* Smith, *et als.*, 2 Heisk., 344.

FROM LINCOLN.

Appeal from the Chancery Court. A. S. MARKS, Chancellor.

BRIGHT & BRIGHT and E. COOPER for complainants.

BOYLES & BURNAM for defendant.

FREEMAN, J., delivered the opinion of the Court.

Henry Turney was guardian for the heirs of Pigg. Before the year 1857 a tract of land was sold by order of the Chancery Court, and purchased by Denham, and his note given the Clerk and Master for the purchase money. The note fell due, and in 1857 an arrangement was made between Denham and Turney, for Denham's accommodation, that Turney should take Denham's note for the amount due his wards, as cash, and Turney, as guardian, hold the debt against Den-

ham, with the benefit of the lien retained by the Clerk and Master on the property sold for its security, while Turney was to receipt the Clerk and Master for the amount due, being the sum of upwards of $1,100.

This was done, Turney holding the note, one payment, of perhaps $145, having been made on it in 1860. In 1863, Denham made payments on the note, as is alleged in the bill, in Confederate money, amounting to between $1,000 and $1,100. It is also charged that these payments were received under duress. We may dismiss this particular question, however, by saying, that it is not made out by the proof, and is not seriously insisted on in argument.

The matter remained thus settled until after the war, when Denham, having heard that Turney intended to sue him to avoid the Confederate payments, called on Turney and said to him, to use his own language, that he understood he was going to *souse* down on him about the Confederate money paid. Defendant admits in his answer that when Turney told him he would be compelled to do so, that he told him not to sue, and he would pay the Confederate money over. This was in 1866. The charge in the bill is specific as to this new promise, and is substantially admitted in the answer.

It is further shown in the proof that complainant forebore to sue, relying on this promise. That Denham fixed, perhaps twice, the time when he would be able to get up the money, but failed to do so. At

last, however, in 1867, probably the latter part of the year, or early in 1868, defendant refused to comply with his promise, and for the first time insisted that the payment was valid, and must stand. At this time Turney told him if he had known this he would have sued him, and made his money out of him before that time.

The question first presented for our decision is, can this new promise be supported and enforced?

The case of *Vance* v. *Smith, et als.,* 2 Heisk., 344, is cited as holding such promise void for want of consideration. It is true, Judge Nelson incidentally remarks in that case, that the promise to take the money back, made next day after the payment, could not be enforced for want of consideration; but this is a mere dictum, as it appears no such case was made out in the proof, and the case, as to this question, was decided on a different ground, the one suggested not being in judgment before the Court.

At the present Term we have held, in a case where a party agreed to re-pay a Confederate payment to a guardian, under circumstances very similar to this, that the promise could be enforced; that a threatened litigation, in which the party, as the law was then held, might have succeeded, with delay of suit in consequence, or in pursuance of the agreement, was a sufficient consideration to support such promise. We think this case as strong as that. Here the guardian has had judgment against him in the County Court for this money received by him, has delayed to sue for up-

wards of a year, relying on the promise—the promise made to avoid a threatened litigation, and is one that may well be enforced. In fact, the case is one not calling for very favorable consideration on the part of Denham, as he evidently took advantage of the state of the times to pay in depreciated currency a debt which the guardian had assumed the responsibility of, indulging him on from 1857 to 1863, and we think, from all the circumstances, one which the guardian did not, probably, desire to collect at that time.

The next question is, what amount of Confederate money was paid? The bill alleges between $1,000 and $1,100. The answer denies this, and says, definitely, it was but $300, the balance in Tennessee and other Southern bank paper. As the allegation is of a promise to re-pay the Confederate money, we must endeavor to ascertain the amount included in the promise. The complainant alleging a promise to pay the Confederate money, has the burden of proof on him to show the amount he claims. The proof is exceedingly unsatisfactory on the question. The payments seem to have been made at two different times. Henry Turney, the complainant, proves positively, as his recollection, the whole amount paid was in Confederate money. We must treat this as evidence, as we find no exception to its competency in the Court below, though it seems Denham's death during the progress of the suit would have rendered it incompetent had such objection been made. His daughter also proves she saw the money, and thinks it was all Confederate money. On

Turney *v.* Denham.

the other hand, we have the answer of Denham, in which he states that only three hundred dollars of it was Confederate money. This, however, but makes an issue, as the bill is an injunction bill, and sworn to. We have the depositions of three of the children of Denham, who swear that the money which their father started from home to pay Turney with was bank bills, except three hundred dollars. We would not consider this testimony as overturning the testimony of complainants, as it wears on its face the aspect of being tinged, to say the least of it, by conversations had in the family on the question. But all the proof tends to show that Denham got a good portion of the money from Jas. M. Bright, which he paid Turney. Bright proves he let him have about $540 in Southern bank money. The best conclusion we can arrive at from the testimony is, that this, probably, is the true amount paid in money other than Confederate. We, therefore, think the amount for which Denham shall be liable is the amount paid, less this sum, fixing the amount paid at $1,100.

The only other question before us is on exception of Turney, against a charge of interest on funds in his hands during the war. We think he should be charged with interest, except on the amount received on the Denham note, which he could not use or loan out. As to the balance, as he recovers interest from Denham, he shall. pay it, and thus be even on this score.

We cannot consider exception of the heirs of Pigg, as they have not appealed.

A decree will be drawn in accordance with this opinion. The costs of this Court will be divided, as the large portion of the transcript brought up was unnecessary. The costs below as to complainant's bill against Denham will be also divided, and balance be paid by Turney.